[Civ. No. 3170. Second Appellate District, Division Two.—February 4, 1920.]

## EDWARD O'NEILL, Respondent, v. JOSEPHINE O'NEILL, Executrix, etc., Appellant.

[1] EVIDENCE—ACTION AGAINST EXECUTRIX—SUFFICIENCY OF FOUNDATION FOR INTRODUCTION OF BOOKS OF DECEDENT.—In an action against an executrix upon a rejected claim, testimony of a witness, in connection with the introduction in evidence of a large book consisting of numerous and divers entries and memoranda, that he had never seen the book before and had no knowledge of what accounts were kept in it, but that he knew the handwriting in the exhibit to be the handwriting of the deceased, and that the deceased kept his books correctly, sufficiently laid the foundation for the introduction of the book in evidence.

[2] ACCOUNTS—SIGNED MEMORANDUM—NOT MUTUAL, OPEN, AND CURRENT ACCOUNT.—In such an action, evidence that the various items were called off from some source by the deceased and put down on a memorandum by plaintiff and that the deceased then signed the memorandum does not show a "mutual, open, and current account."

[3] ID.—STATUTE OF LIMITATIONS—ACKNOWLEDGMENT OF DEBT—MUST BE ADDRESSED TO CREDITORS.—A mere memorandum, although it may contain a distinct and unconditional recognition of a certain obligation, unless addressed to the creditor, is not sufficient to take the debt out of the statute of limitations.

[4] ACCOUNTS—RECIPROCAL DEMANDS DEFINED—ONE ITEM NOT MUTUAL, OPEN, AND CURRENT ACCOUNT.—To constitute a mutual, open, and current account there must be reciprocal demands; and the term "reciprocal demands" found in section 344 of the Code of Civil Procedure is synonymous with or the equivalent of the term "mutual account" named in the first part of that section. Mutual accounts are made up of matters of setoff, where there is debt on one side which constitutes credit on the other, or where there is express or implied understanding that mutual debts shall be satisfied or set off *pro tanto* between the parties, and one item cannot be said to comply with these requirements.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge. Reversed.

2. What are mutual accounts, note, Ann. Cas. 1913D, 816.

4. What constitutes an open current account within the statute of limitations, note, 1 A. L. R. 1060.

The facts are stated in the opinion of the court.

Michael F. Shannon, C. M. Mooslin and Ernest L. Kolb for Appellant.

J. Wiseman Macdonald and W. W. Wallace for Respondent.

THOMAS, J.—This is an action brought against the defendant, as executrix of the estate of John R. O'Neill, deceased, upon a claim, which had been rejected, in the sum of $5,222.05.

The complaint is in the usual form, alleging indebtedness "upon and according to a mutual, open, and current book account for money had and received." The formal allegations of the complaint are admitted. By specific denial of the alleged indebtedness in said or any sum, and, by way of separate defense, an allegation that the plaintiff's alleged cause of action was barred by subdivision 2 of section 337 of the Code of Civil Procedure, the issues were joined. The case was tried without a jury. Findings were in favor of the plaintiff on all the issues, and judgment was entered accordingly for the full amount asked. There was a motion for a new trial, which was denied. The appeal is from the judgment so entered.

The record before us consists only of the transcript and appellant's opening brief.

The legal prerequisites for the bringing of an action on account,. such as is stated in the complaint in this action, within the saving clause of the statute are concretely set forth in the case of *Norton* v. *Larco,* 30 Cal. 126, [89 Am. Dec. 70], to which, without quoting therefrom, we refer. Here the plaintiff has no records of his own that he has offered in evidence. His entire documentary evidence is taken from among the records—if such they may be denominated—found among the effects of the decedent; and, it would seem, therefore, that he is trying in this action to prove his claim by his interpretation of what the contents of the purported books are, and what they say.

[1] It is urged that the court erred in permitting the plaintiff, over defendant's objection, to introduce in evidence the document referred to in the record before us as "Plain-

tiff's Exhibit No. 4," and described as "a large book consisting of numerous and divers entries and memoranda, all of which, or at least a large portion, no doubt, being in the handwriting of the deceased." The only foundation laid for the introduction of this exhibit was the testimony of the witness Maier, who testified that he "had never seen inside that [book] before," and that he had no knowledge of what accounts were kept in it, but that he knew the handwriting in the exhibit to be the handwriting of the deceased, and that the deceased kept his books correctly. The objection made is entirely destitute of legal support; the foundation laid was sufficient. (17 Cyc. 395; *McLellan* v. *Crofton,* 6 Greenl. (Me.) 307.)

[2] It is contended by appellant that the account—the basis of this action—is not in any sense a "mutual, open, and current account." With this contention we are in full accord. Plaintiff's own evidence shows that, so far as the item of $4,600.15, entered under date of May 1, 1905, is concerned, it is, and, from the very nature of the case, must be, an item that is no part of a "mutual, open, and current book account." This evidence is the stipulation of the parties themselves on the trial, by which it was agreed that "from some source" the items were called off by O'Neill and put down on this memorandum of $4,600.15 in order to arrive at how much was due from John O'Neill to Ed, and that when they were called off by John and put down by Ed O'Neill, that then John O'Neill signed the memorandum —Plaintiff's Exhibit No. 1. The entry of the amount set forth in the exhibit referred to—which is the amount so found to be due on May 1, 1905, at Calumet, Michigan— would not, we think, by that action alone change its legal aspect so as to make it "an open, mutual, and current book account" in California. If, however, we are wrong in this conception of the matter, and it being held by this court that "Exhibit No. 4" was legally and properly received in evidence, then we are confronted with the query: Does the entry of one item, assumed to have been entered on January 27, 1913, by deceased, charging himself with $250 as being due from him on that date to plaintiff in addition to the other items already referred to constitute such an account? We think not. Regardless of this fact, there is nothing in this record inconsistent with an assumption,

and, indeed, we think it may be so inferred, that the deceased kept this "account" simply to keep in his memory the amount owing by him to his brother, if such were in fact the case, as a debt of honor. [3] Still, however, it is also true that, unless this was addressed to the creditor —plaintiff here—notwithstanding it may contain a distinct and unconditional recognition of a certain obligation, it is not sufficient to take it out of the statute of limitations. (*Roper* v. *Smith, ante,* p. 302, [187 Pac. 454].) [4] To constitute such an account as contended for here there must be "reciprocal demands" (Code Civ. Proc., sec. 344; *Fraylor* v. *Sonora Mining Co.,* 17 Cal. 594) ; and the "reciprocal demands" named in the code section quoted are synonymous with or the equivalent of the "mutual account" named in the first part of that section. Mutual accounts are made up of matters of setoff, where there is debt on one side which constitutes credit on the other, or where there is express or implied understanding that mutual debts shall be satisfied or set off *pro tanto* between the parties. (*Millet* v. *Bradbury,* 109 Cal. 170, [41 Pac. 865].) Certainly one item cannot be said to comply with these requirements. Nor do we believe the evidence before us shows the account attempted to be the basis of this action to be such an account. There is, we think, nothing to bring it within the purview of the section referred to as "reciprocal demands" or "mutual account," because in every instance it is, if anything, a debit charge by deceased against himself and in favor of the plaintiff. If it is claimed that the shares of stock mentioned in the account were "held" by deceased for plaintiff, then clearly there was no mutual account between them, for the relation of trustee and beneficiary would exist; in which case the deceased would not become the debtor of the beneficiary as to the trust until after a demand by the latter and a refusal by the trustee. No such demand or refusal is here shown. We think that this action presents a case, if at all, on an account stated, rather than upon a "mutual, open, and current book account."

After going through the entire record we are forced to the conviction of the accountant, who testified that he had examined each of these books with the idea of ascertaining, if he could, whether money was due from plaintiff to deceased, or *vice versa,* and that he could arrive at no con-

clusion because there was no record other than a memorandum record "here and there," and nothing was completed in any way. There is evidence of the plaintiff himself in this case which shows conclusively, we think, that instead of the relation of debtor and creditor existing between the plaintiff and deceased during the latter's lifetime, if any relation existed at all, it was that of a copartnership. In that event it would seem that the action should have been one for an accounting, before judgment could be entered. This, however, is merely to call attention to the very unsatisfactory condition of the record.

It may also be stated that we have failed utterly to find the, or any, evidence upon which the trial court arrived at the amount of the judgment entered.

Judgment reversed.

Finlayson, P. J., and Sloane, J., concurred.